IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TAMIKA DRUMMOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) CASE NO. 5:20-cv-01362-DAE |
| EQUIFAX INFORMATION SERVICES, | ) |
| LLC, TRANS UNION, LLC, FIRST | ) |
| PREMIER BANK, FIRST SAVINGS | ) |
| BANK, PHOENIX RECOVERY GROUP | ) |
| d/b/a TOLTECA ENTERPRISES, INC., | ) |
| | ) |
| Defendants. | ) |

**FIRST SAVINGS BANK'S MOTION TO DISMISS
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Defendant First Savings Bank ("FSB") moves to dismiss all counts against it with prejudice under Federal Rule of Civil Procedure 12(b)(6), because the First Amended Complaint fails to state a plausible claim upon which relief can be granted.[1] In support of its Motion, FSB states as follows:

**I. INTRODUCTION**

Plaintiff Tamika Drummond ("Plaintiff") filed suit alleging a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), which requires furnishers of information (such as FSB) to investigate disputed information and report the results of their investigation to consumer reporting agencies ("CRAs"). Plaintiff claims her Equifax and TransUnion credit reports include "an erroneous and damaging notation of account in dispute." According to Plaintiff, the "disputed" notation was erroneous because it appeared after she changed her mind

---

[1] FSB notes that the arguments raised in this motion are similar to the arguments raised in co-defendant First Premier Bank's Motion to Dismiss (Doc. 24), and FSB joins in and adopts the arguments raised in First Premier Bank's Motion to Dismiss.

1

and notified consumer reporting agencies ("CRAs") that she no longer disputed the tradelines. However, the overwhelming majority of courts to address this theory of liability have found a furnisher cannot be liable under § 1681s-2(b) if the plaintiff notifies the CRAs (and not the furnisher) that she no longer disputes the tradeline.[2] Courts have reached this conclusion because § 1681s-2(a)(3) requires a furnisher to mark the account as disputed when it receives a dispute directly from the consumer. Thus, courts have correctly dismissed claims based on this "gotcha" theory of liability and held that, in order to remove the dispute notation, a consumer must directly inform the furnisher he or she no longer disputes the tradeline.

Plaintiff's claims must be dismissed for the additional reason that she fails to allege she disputes the "completeness or accuracy of any information." Because FSB's duty to investigate under § 1681s-2(b) arises only after a CRA notifies it that a consumer disputes the "completeness or accuracy of any information," Plaintiff has not—and cannot—state a claim under the FCRA as a matter of law.

Finally, Plaintiff's claim under § 1681s-2(b) fails as a matter of law because she has not—and cannot—show she was injured by FSB's alleged failure to conduct a reasonable investigation. Plaintiff claims that she no longer disputed the FSB tradeline and sent the CRAs a letter to that effect. As such, Plaintiff cannot show that FSB's investigation would have uncovered any information to verify or refute the fact that Plaintiff changed her mind with

---

[2] *Roth v. Equifax Info. Servs., LLC*, No. 2:16-cv-04325 JWS, 2017 WL 2181758 (D. Ariz. May 17, 2017); *McGee v. Equifax Info. Servs., LLC*, No. 1:18-CV-04144-MHC-CMS, 2019 WL 2714505, at *3 (N.D. Ga. Mar. 19, 2019) (Salinas, M.J.), *report and recommendation adopted*, 2019 WL 2714497 (N.D. Ga. Apr. 9, 2019) (Cohen, J.); *Foreman v. Equifax Sols., LLC*, No. 1:20-CV-1870-TCB-WEJ, 2020 WL 8254379 (N.D. Ga. Nov. 10, 2020); *White v. Equifax Info. Servs., LLC*, No. 1:20-cv-1871-TCB-WEJ (N.D. Ga. Nov. 27, 2020), *report and recommendation adopted*, No. 1:20-cv-1871-TCB-WEJ (N.D. Ga. Feb. 17, 2021); *Fisher v. Equifax Info. Servs., LLC*, 1:20-cv-2852-SDG-CMS (N.D. Ga. Jan. 22, 2021); *Hardnett v. Equifax Info. Servs., LLC*, 1:20-cv-3017-LMM-RDC (N.D. Ga. Nov. 16, 2020).

respect to the dispute. Because the FCRA requires furnishers to conduct a reasonable investigation after receiving notice of a dispute, Plaintiff cannot show that FSB's investigation was unreasonable and does not allege sufficient facts to plausibly show FSB's conduct caused her damages.

For all of these reasons, Plaintiff's FCRA claim against FSB is due to be dismissed, with prejudice.

## II. FACTUAL ALLEGATIONS

On November 25, 2020, Plaintiff filed the instant lawsuit against several defendants, including FSB, alleging a violation of § 1681s-2(b) of the FCRA. (*See* Doc. 1.) On January 22, 2021, Plaintiff filed a First Amended Complaint asserting the same cause of action. (*See* Doc. 6, First Amended Compl. ¶ 6.)[3] Plaintiff claims that defendants are inaccurately reporting an "account in dispute" notation on Plaintiff's Equifax and Trans Union credit file. (*Id.*, ¶ 6.) She states that she "***no longer*** disputes the Errant Tradelines." (*Id.*, ¶ 11 (emphasis added).) Plaintiff pleads that she noticed the reporting with the notations of "account in dispute" in March of 2020 and submitted a letter to co-defendants Equifax Information Services, LLC ("Equifax") and TransUnion, LLC ("TransUnion") on May 14, 2020, asking the credit reporting agencies ("CRAs") to remove the "account in dispute" notation. (*Id.*, ¶¶ 12–13.) She alleges that Equifax and TransUnion forwarded her dispute to FSB. (*Id.* at ¶ 14.) Plaintiff then states that on June 15, 2020, she again obtained her Equifax and TransUnion disclosures, which showed that the accounts still noted they were in dispute. (*Id.* ¶ 15.) She claims she has suffered "credit" and "emotional" damages and "experienced humiliation, mental distress and anxiety due to the

---

[3] FSB recites Plaintiff's allegations to demonstrate that they fail to state a plausible claim for relief, but FSB does not admit the truth of any allegations. *See Hammer v. Equifax Info. Servs., LLC*, 974 F.3d 564, 567 (5th Cir. 2020) (stating that court accepts as true plaintiff's allegations at motion to dismiss stage).

damage to her reputation from Defendants' failure to correct the errors in her credit files or improve her financial situation by obtaining new or more favorable credit terms. . . ." (*Id.* at ¶ 20). Nowhere in her First Amended Complaint does Plaintiff allege she ever notified FSB that she no longer disputes the FSB tradelines. (*See generally* Doc. 6.)

### III. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (stating complaint that failed to "nudge[] . . . claims across the line from conceivable to plausible" must be dismissed). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (stating complaint should not survive dismissal if it "tenders [only] naked assertion[s] devoid of further factual enhancement").

When considering this motion to dismiss, the Court must accept Plaintiff's factual allegations as true and view them in the light most favorable to her. *Hammer v. Equifax Info. Servs., LLC*, 974 F.3d 564, 567 (5th Cir. 2020). The Court need not, however, accept as true her "legal conclusion[s] couched as . . . factual allegation[s]." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (citations omitted). Plaintiff's allegations fail to satisfy this pleading standard, and her claims against FSB should be dismissed under Rule 12(b)(6).

### IV. ARGUMENT

A. **The Fair Credit Reporting Act**

The FCRA is a consumer protection statute that imposes different duties on CRAs and "furnishers of information" to the CRAs. *See Egwurube v. Discover Fin'l Servs.*, No. 3:20-CV-

4

00292, 2021 WL 260769, at *2 (S.D. Tex. Jan. 4, 2021). "Furnishers of information" like FSB must: (1) submit accurate information to the CRAs, and (2) investigate consumer disputes received from the CRAs. *See* 15 U.S.C. § 1681s-2(a), 2(b). However, "the FCRA expressly precludes a private right of action against a furnisher for failing to provide accurate information as required by § 1681s-2(a)." *Egwurube*, 2021 WL 260769, at *3 (citing 15 U.S.C. § 1681s-2(c); *Burress v. Chase Card*, No. 3:19-CV-01198-S-BT, 2020 WL 1216703, at *2 (N.D. Tex. Feb. 18, 2020)); *see also Rios v. Randolph Brooks Fed. Credit Union*, No. 5:13-CV-946-DAE, 2014 WL 3897806, at *3 (W.D. Tex. Aug. 8, 2014) ("Generally 15 U.S.C. § 1681s-2 does not create a private right of action against furnishers of credit information, such as banks and credit unions for inaccurate credit information."). Instead, the "only private right of action consumers have against furnishers is for a violation of § 1681s-2(b), which requires furnishers to conduct an investigation following notice of a dispute [received from a CRA]." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1312 (11th Cir. 2018).[4]

      **B.**      **Plaintiff's FCRA claim must be dismissed because she fails to allege she directly notified FSB that she "no longer disputes" the tradeline.**

Plaintiff alleges she sent Equifax and Trans Union (but not FSB) a letter stating she "no longer disputes" the FSB tradelines, which suggests that she disputed the tradelines at some earlier point in time. (Doc. 6, ¶ 13.) Plaintiff claims that because FSB continued to report the

---

[4] Courts have stated that the "appropriate touchstone" for evaluating a furnisher's investigation under § 1681s-2(b) is "reasonableness." *Felts*, 893 F.3d at 1312 (citing *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1301–02 (11th Cir. 2016)); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009) (adopting § 1681s-2(b) reasonableness standard). The Court may find a furnisher's investigation is "reasonable" as a matter of law. *See Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (applying reasonableness standard to furnisher claim and noting that judgment for furnisher is proper where "reasonableness of the defendant's procedures is beyond question") (citation omitted).

account as disputed after receiving notice from the CRAs, it violated § 1681s-2(b) by failing to conduct a reasonable investigation.

Other district courts have rejected FCRA claims based on identical allegations. In *McGee v. Equifax Information Services, LLC*, the court refused to impose liability against furnishers of credit information when the plaintiff never directly communicated to the furnishers the fact that she no longer disputed the debt. No. 1:18-CV-04144-MHC-CMS, 2019 WL 2714505, at *3 (N.D. Ga. Mar. 19, 2019) (Salinas, M.J.), *report and recommendation adopted*, 2019 WL 2714497 (N.D. Ga. Apr. 9, 2019) (Cohen, J.). Because she did not "allege that she directly informed [the furnisher] about her change of heart; rather, she alleges only that she informed Equifax and Experian that she no longer disputed the debt," the furnisher had no choice under FCRA but to continue correctly reporting the dispute. *Id.* "[I]f a consumer does not directly tell the furnisher that it no longer disputes the debt, the FCRA requires the furnisher to retain that dispute status pursuant to 15 U.S.C. § 1681s-2(a)(3)." *Id.* Consequently, the court dismissed McGee's claims, with prejudice.

The *McGee* court relied on *Roth v. Equifax Info. Servs., LLC*, No. 2:16-cv-04325 JWS, 2017 WL 2181758 (D. Ariz. May 17, 2017), where the plaintiff also sued furnishers of information for failing to remove the notation that her account was in dispute. In *Roth*, the plaintiff alleged she directly disputed the reporting of a consumer debt to the account servicer. *Id.* at *1. The servicer in turn instructed the CRAs to report the account with "dispute" language. *Id.* Like Plaintiff here, Roth alleged she elected to "no longer dispute" the account, and directly contacted a CRA to remove the "dispute" language associated with the servicer's trade line. *Id.* She sued the CRA and her account servicer for FCRA violations when her credit report continued to include references to her original account dispute. *Id.*

The court dismissed Roth's FCRA claims against her account servicer, with prejudice. *Id.* at *4. The court acknowledged that there were occasions when a servicer was required to report Roth's account as disputed under the FCRA and it found that Roth's communications with the CRA did not require the servicer to change the dispute status. *Id.* at *3. The court found that Roth "never directly told [her servicer] that [she] no longer disputed the debt, and therefore [the servicer] is required under [the] FCRA to retain that dispute status. [The servicer] cannot be liable for both reporting Plaintiff's account as disputed and not reporting it as disputed." *Id.*

The same reasoning holds here. Plaintiff alleges she *no longer* disputed the tradeline. (Doc. 6, ¶ 7.) She then alleges she "submitted a letter" to the CRAs stating she *did not* dispute her debts. (Doc. 6, ¶ 12.) She does not allege she communicated her change of heart to FSB. Therefore, FSB was required to continue reporting the account as disputed under § 1681s-2(a)(3). Accordingly, FSB cannot be liable to her under the FCRA for the "dispute" notation on her credit reports. This Court should adopt the reasoning in *McGee* and *Roth* and dismiss Plaintiff's claims against FSB, with prejudice.

FSB anticipates that Plaintiff will attempt to distinguish *Roth* and *McGee* by arguing the First Amended Complaint omits any allegation indicating to whom Plaintiff initially disputed the subject account. However, and as courts addressing this claim have recognized, this omission is likely a "thinly veiled attempt to avoid the result in *McGee*" and *Roth*, and have continued to dismiss FCRA claims based on allegations identical to those here. *See Briscoe v. Equifax Info. Servs., LLC*, No. 1:20-cv-02239-WMR, Doc. 44, p. 17; *see also Foreman v. Equifax Sols., LLC*, No. 1:20-CV-1871-TCB-WEJ, 2020 WL 8254379, at *4 (N.D. Ga. Nov. 10, 2020) (finding the distinction "immaterial" and stating "[a] furnisher cannot be liable for both reporting a plaintiff's account as disputed and not reporting it as disputed. Thus, plaintiff's failure to notify [the

furnisher] directly that she no longer disputed the tradeline is fatal under the logic of *Roth* and *McGee*."); *Fatah v. Equifax Info. Servs., LLC*, No. 5:20-CV-272 (MTT), 2021 WL 798854, at *3 (M.D. Ga. Mar. 2, 2021) (noting "counsel began omitting details about the initial dispute. In this case, counsel does not even explicitly plead there was an initial dispute, only that "Plaintiff no longer disputes the [] [t]radelines. . . Thus, to the extent the complaint is missing key context for these claims, those omissions appear largely intentional."). Therefore, the well-reasoned decisions in *Roth* and *McGee* apply to Plaintiff's claims here and require that they be dismissed with prejudice.

  **C.** **Plaintiff fails to allege a consumer dispute which would trigger FSB's obligation to investigate.**

  Plaintiff alleges she notified the CRAs that she "no longer disputes" her debts and FSB violated § 1681s-2(b) by continuing to report the accounts as disputed after the CRAs notified FSB of the same. (Doc. 6.) However, withdrawing a dispute does not constitute a new "dispute" that triggers FSB's obligation to conduct an investigation under § 1681s-2(b).

  As this Court has explained, to maintain a private right of action under § 1681s-2(b), a plaintiff must show "(1) he notified a consumer reporting agency of inaccurate information; (2) the consumer reporting agency notified the furnisher of the dispute; (3) the furnisher failed to conduct an investigation, correct any inaccuracies, and failed to notify the consumer reporting agency of the results of the investigation." *Ostiguy v. Equifax Info. Servs., LLC*, No. 5:16-CV-790-DAE, 2017 WL 1842947, at *4 (W.D. Tex. May 4, 2017). This Court has also recognized that "the duties created by § 1681s-2(b) do not arise until the furnisher of information receives notice from a [CRA], pursuant to § 1681i(a)(2), that a consumer is ***disputing credit information***." *Pachecano v. JPMorgan Chase Bank, N.A.*, No. SA-11-CV-00805-DAE, 2013

WL 4520530, at *12 (W.D. Tex. Aug. 26, 2013) (quoting *Bank One, N.A. v. Colley*, 294 F. Supp. 2d 864, 870 (M.D. La. 2003) (emphasis added)).

The *Briscoe* case is instructive.  Addressing allegations identical to those here, the *Briscoe* court found that the plaintiff's request to remove the "account in dispute" notation failed to "explicitly challenge the accuracy or completeness of any of the credit information" the furnisher provided or "ask for any investigation or reinvestigation (by either [the CRA] or [the furnisher])." *Briscoe*, No. 1:20-cv-02239-WMR, Doc. 44, p. 13.  The court went on to say that "Plaintiff has cited no FCRA provision or binding case law providing that when a consumer unilaterally changes her mind and informs a CRA (but not the furnisher) that she no longer disputes an account, but provides no specifics or reasons or facts to support her change of heart, that such a withdrawal constitutes a new 'consumer dispute' for purposes of the FCRA." *Id.* at 14.  The court therefore held that Plaintiff's failure to allege the tradeline was "always incorrect, inaccurate, or erroneous" did not satisfy the *Iqbal*/*Twombly* pleading standard, and the allegations lacked the facial plausibility to survive dismissal. *Id.* at 14–15.

Here, Plaintiff alleges only that she submitted a letter to Equifax and Trans Union stating she no longer disputes the FSB tradelines.  Nowhere in her First Amended Complaint does she claim she challenged the accuracy or completeness of the FSB tradelines, or requested that the CRAs or FSB conduct an investigation.  Moreover, Plaintiff fails to even allege that the "account in dispute" notation was inaccurate.  Rather, she claims she simply asked the CRAs and FSB to remove this notation.  As such, Plaintiff fails to sufficiently allege that she disputed the accuracy of any information reported.  Because Plaintiff fails to allege she disputed the accuracy of information reported, she has not—and cannot—show that her letter triggered FSB's duty to

9

investigate under § 1681s-2(b). Therefore, Plaintiff's FCRA claim should be dismissed with prejudice.

### D. Plaintiff does not allege facts that plausibly show causation or damages.

Plaintiff's FCRA claims fail for the additional reason that she does not allege facts plausibly showing FSB's conduct caused her damages. To state a claim under the FCRA, Plaintiff must either prove that FSB "willfully" violated the statute (which is impossible when FSB did not know of her change of heart) or must demonstrate an entitlement to actual damages. To state a claim for a negligent violation of the FCRA, Plaintiff must allege facts plausibly showing she was proximately and actually damaged by FSB's unreasonable investigation of her dispute. *See* 15 U.S.C. § 1681o (stating that consumer must show "actual damages sustained by the consumer as a result of the [furnisher's] failure [to comply with the FCRA]"); *see also Hollins v. Trans Union LLC*, No. H-18-2951, 2019 WL 3042641, at *2 n.14 (S.D. Tex. May 3, 2019) ("The court does note, however, that, in order to be entitled to actual damages, Plaintiff ultimately will have to show that the damages resulted from Trans Union's failure to comply with the statute." (citations omitted)).

Courts need not determine the reasonableness of a furnisher's investigation if a complaining plaintiff fails to allege facts plausibly showing she was actually damaged by the investigation. *See Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) ("We need not reach the substance of [plaintiff's] FCRA claims against TRW because we find that he has utterly failed . . . to show that he was damaged as a result of an allegedly inaccurate TRW credit report"); *Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322, 1326-27 (M.D. Fla. 2015) ("It is the plaintiff's burden to show that [an] investigation was not reasonable, and that there was a causal relationship between the unreasonable investigation and the failures

45172119 v1

to discover inaccuracies in the plaintiff's account."); *see also Bagby v. Experian Info. Sols.*, 162 F. App'x 600, 603–04 (7th Cir. 2006) (internal quotation omitted) (stating that court "begin[s] it analysis with damages" before "delving into a reasonableness inquiry").

The vague allegations in Paragraph 20 are insufficient to meet even the bare plausibility standard. It is unclear what "credit and emotional damages" are, exactly, or how Plaintiff expected FSB to "improve her financial situation" by not reporting an account as in dispute that she previously disputed. Moreover, her later, conclusory allegations of mental anguish, suffering, humiliation and embarrassment, absent any factual support, are insufficient to plausibly allege damages.

But more importantly, even assuming Plaintiff could allege some type of cognizable damages, Plaintiff fails to establish how FSB caused such damages. Specifically, she does not allege facts that plausibly show FSB would have discovered information that Plaintiff "no longer" disputed her debt if they had conducted a "reasonable investigation" of her second dispute to the CRAs. On the contrary, Plaintiff's alleged facts demonstrate that FSB, upon investigating, could only discover that Plaintiff at some point had disputed her debt to FSB, and FSB's investigation into its files would not reveal any new information. *See Roth*, 2017 WL 2181758, at *3 ("The last [the furnisher] heard directly from Plaintiff was that she disputed the debt and that is all any investigation of [the furnisher's] files would have turned up."); *Foreman*, 2020 WL 8254379, at *4 (finding furnisher had nothing to investigate when it received plaintiff's letter, and "any investigation would have yielded no new information to compel it to withdraw plaintiff's dispute"). Thus, any investigation would not have yielded a different result, and, consequently, Plaintiff cannot show damages stemming from FSB's investigation. The Court should therefore dismiss Plaintiff's FCRA claims, with prejudice. *See Felts*, 893 F.3d at

11

1313 (finding that FCRA claim fails if plaintiff cannot demonstrate that "had the furnisher conducted a reasonable investigation … [it] would have discovered that the information it reported was inaccurate or incomplete, triggering [its] obligation to correct the information.").

## V. CONCLUSION

Plaintiff fails to allege facts that support a plausible FCRA claim against FSB as a matter of law.  The Court should accordingly dismiss her First Amended Complaint with prejudice under Rule 12(b)(6).

Respectfully submitted this 15th day of March, 2021.

>  /s/ Alan D. Leeth
>  Alan D. Leeth
>  Texas Bar No. 241086260
>  **BURR & FORMAN LLP**
>  420 N. 20th Street, Suite 3400
>  Birmingham, AL 35203
>  Telephone: (205) 251-3000
>  Facsimile: (205) 244-5670
>  aleeth@burr.com
>
>  /s/ Jeffrie B. Lewis
>  Henry B. Gonzalez III
>  Jeffrie Boysen Lewis
>  **GONZALEZ CHISCANO ANGULO & KASSON, P.C.**
>  9601 McAllister Freeway, Suite 401
>  San Antonio, TX 78216
>  Telephone: (210) 569-8500
>  Facsimile: (210) 569-8490
>  hbg@gcaklaw.com
>  jlewis@gcaklaw.com
>
>  Attorneys for Defendant
>  FIRST SAVINGS BANK

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March, 2021, I presented the foregoing **MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF** to the Clerk of Court for filing and uploading to the CM/ECF system, which will serve all counsel of record.

*/s/ Alan D. Leeth*
Alan D. Leeth

45172119 v1