IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Tamika Drummond,<br><br>    Plaintiff,<br><br>vs.<br><br>Equifax Information Services, LLC, et al.,<br><br>    Defendants. | Case No.: 2:20-cv-01362-DAE<br><br>**PLAINTIFF'S RESPONSE TO FIRST PREMIER BANK'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

NOW COMES the Plaintiff, TAMIKA DRUMMOND, by and through her counsel, and responds to Defendant First Premier Bank's ("First Premier") Motion to Dismiss the First Amended Complaint as follows:

### INTRODUCTION

This lawsuit arises from Defendants' failures to remove inaccurate dispute remarks from tradelines in Plaintiff's credit files, in violation of the Fair Credit Reporting Act ("FCRA"). First Premier primarily argues that Plaintiff's claims should be dismissed because: (1) Plaintiff did not send her dispute directly to First Premier; (2) First Premier had no duty to investigate the dispute; and (3) First Premier had nothing to investigate. However, First Premier's arguments fail.

First, the FCRA does not require a consumer to send a dispute directly to the entity that furnishes the information ("furnisher") to a consumer reporting agency ("CRA"). To the contrary, the FCRA is set up for a consumer to send her dispute to a CRA, who is required to forward the dispute to the furnisher. Plaintiff properly sent her dispute to the CRAs, who were required to forward Plaintiff's dispute to First Premier. In addition, it makes no difference whether First Premier received Plaintiff's dispute directly from Plaintiff or indirectly from Plaintiff via a CRA.

1

Second, the FCRA required First Premier to investigate Plaintiff's dispute of the inaccurate dispute status. A furnisher must investigate a consumer's dispute of an inaccurate dispute status no differently than it must investigate a dispute of any other type of inaccurate information.

Third, when it received Plaintiff's disputes from the CRAs, First Premier had everything it needed to investigate Plaintiff's dispute. Plaintiff's statement that she no longer disputed the First Premier tradeline and wanted the inaccurate dispute remarks removed provided all of the relevant information necessary for First Premier to perform its investigation. Nothing else could have impacted or enhanced First Premier's ability to investigate Plaintiff's dispute.

First Premier's investigation of Plaintiff's dispute should have been simple. First Premier should have read Plaintiff's dispute letter, learned that the dispute remarks in its tradeline are inaccurate and removed them. Instead, First Premier did nothing. Accordingly, First Premier failed to properly investigate Plaintiff's dispute and violated 15 U.S.C. § 1681s-2(b) of the FCRA.

## STATEMENT OF FACTS

On March 20, 2020, Plaintiff obtained her credit disclosures from Equifax and Trans Union and noticed First Premier's tradeline reporting with dispute remarks. (Doc #6, ¶¶ 6, 7.) Plaintiff no longer disputes the First Premier tradeline. (Doc #6, ¶ 11.) Therefore, on or about May 14, 2020, Plaintiff submitted letters to Equifax and Trans Union stating that she no longer disputed the First Premier tradeline and wanted the inaccurate dispute status removed from the tradeline. (Doc #6, ¶ 13.) Equifax and Trans Union then forwarded Plaintiff's disputes to First Premier, which received Plaintiff's disputes from Equifax and Trans Union. (Doc #6, ¶ 14.)

First Premier failed to conduct a reasonable investigation of Plaintiff's disputes. (Doc #6, ¶¶ 22, 29.) First Premier also failed to review all relevant information available to it and provided by Equifax and Trans Union; namely, Plaintiff's dispute letters. (Doc #6, ¶¶ 23, 30.) On June 15,

2020, Plaintiff obtained her Equifax and Trans Union credit files, which showed that First Premier failed to remove the inaccurate dispute status from the First Premier tradeline.  (Doc #6, ¶ 15.)

As a direct and proximate cause of First Premier's failures to comply with the FCRA, Plaintiff suffered credit and emotional damages.  (Doc #6, ¶ 20.)  Plaintiff also experienced undue stress and anxiety due to the damage to her reputation from First Premier's failure to correct the errors in her credit files or improve her financial situation by obtaining new or more favorable credit terms as a result of First Premier's violations of the FCRA.  (Doc #6, ¶ 20.)  Moreover, Plaintiff suffered mental anguish, suffering, humiliation, and embarrassment as a result of First Premier's violations of the FCRA.  (Doc #6, ¶¶ 25, 31.)

## STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter which, if accepted as true, "states a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 663 (2009), quoting *Bell Atlantic Corp*. v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. 663.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id*., at 664.

"Dismissal is proper only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Rodriguez v. Rutter*, 310 Fed. Appx. 623, 626 (5th Cir. 2009) (citations omitted).  "Motions to dismiss under Rule 12(b)(6) are rarely granted and generally disfavored."  *Id*.  "The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff."  *Id.*

3

**ARGUMENT**

As observed by the U.S. Supreme Court, the FCRA was enacted for the protection of consumers through the imposition of strict limitations upon the collection and dissemination of consumer financial information:

> Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.

*Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47 (2007). The FCRA must be "liberally construed in favor of the consumer." *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964 (6th Cir. 1998).

Section 1681s-2(b) of the FCRA sets forth responsibilities of furnishers of information upon receiving notice of a consumer dispute. If a furnisher fails to comply with these requirements, then 15 U.S.C. §§ 1681n and 1681o authorize a consumer to bring suit for damages.

1. **Plaintiff pled sufficient facts to plausibly state her claims against First Premier**

As with any other disputed information by a consumer that a furnisher receives from a CRA, First Premier was required to conduct an investigation of Plaintiff's dispute of the inaccurate dispute status in First Premier's tradeline and take the appropriate action.

"To recover against a furnisher for violations of § 1681s–2(b), a plaintiff must show that: (1) he disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified the furnisher of the consumer's dispute; (3) and the furnisher failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation." *Shaunfield v. Experian Info. Solutions, Inc.*, 991 F. Supp. 2d 786, 805 (N.D. Tex. 2014). The "requirement to conduct a reasonable investigation to determine whether disputed information in a consumer credit report can be verified is widely recognized." *Robertson v. J.C. Penney Co., Inc.*, No. 06-cv-3, 2008 WL 623397, at *8 (S.D. Miss. Mar. 4, 2008). "A reasonable

4

investigation 'clearly requires some degree of careful inquiry by creditors' and more than just a 'superficial' inquiry." *Id.* (citation omitted).

"A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvedo v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998). In addition, "information that is 'open to an interpretation that is directly contradictory to the true information' is sufficiently misleading to qualify as inaccurate." *Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 707, 715 (S.D. Tex. 2013) (citation omitted).

Plaintiff alleged that she disputed the inaccurate dispute status of the First Premier tradeline to the CRAs, who forwarded Plaintiff's disputes to First Premier. (Doc #6, ¶ 14.) After receiving Plaintiff's disputes from the CRAs, First Premier was required to conduct a reasonable investigation. *Shaunfield, supra*; *Robertson, supra*. Moreover, the dispute remarks are plainly inaccurate, as Plaintiff informed First Premier that she no longer disputes the tradeline. (Doc #6, ¶¶ 11, 13, 14.) In addition, the dispute remarks are "open to an interpretation that is directly contradictory to the true information" (that Plaintiff does not dispute the First Premier tradeline), which therefore "is sufficiently misleading to qualify as inaccurate." *Toliver, supra*. Plaintiff alleges that First Premier failed to conduct a reasonable investigation of Plaintiff's disputes and failed to review all relevant information available to it and provided by the CRAs; namely, Plaintiff's letters disputing the inaccurate dispute status. (Doc #24, ¶¶ 48, 49, 55, 56.) Thus, Plaintiff alleged a prima facie claim against First Premier for violating the FCRA.

2. **The opinions upon which First Premier relies are inapplicable**

Notwithstanding 15 U.S.C. § 1681s-2(b) of the FCRA and a plethora of case law stating a furnisher's duties to investigate consumer disputes, First Premier first argues that it did not violate

the FCRA because Plaintiff did not directly notify it that she no longer disputed the tradeline and wanted the dispute remarks removed. (Doc #24, pp. 7-11.) In support thereof, First Premier primarily relies upon opinions from the Northern District of Georgia. However, the opinions upon which First Premier relies both are distinguishable from the instant case and were wrongly decided.

### A. **The opinions from the Northern District of Georgia are distinguishable from the instant case**

First Premier first cites *Roth v. Equifax Info Servs., LLC*, No. 16-cv-4325, 2017 WL 2181758 (D. Ariz. May 17, 2017). (Doc #24, pp. 8-9.) In *Roth*, the plaintiff had sent a *direct dispute* to the debt collector, which required the debt collector to report the account as disputed. *Roth*, 2017 WL 2181758 at *3. The plaintiff later sent a letter to Equifax stating that she no longer disputed the account and wanted the dispute remarks removed. *Id.* The court held that the FCRA requires a furnisher to "report a debt as disputed when a consumer disputes a debt *directly to it*." *Id.* at *3 (emphasis added). The court then found that "Based on the complaint, Plaintiff had *originally disputed the RSI Trade Line with RSI*, and consequently RSI was required to report it as a disputed debt. As the complaint is written, Plaintiff never directly told RSI that it no longer disputed the debt, and therefore RSI is required under FCRA to retain that dispute status." *Id.* (emphasis added). Citing 15 U.S.C. 1681s-2(a)(3), the court held that the plaintiff was required to send a letter directly to the debt collector to have the dispute remarks removed rather than sending it through Equifax, because the plaintiff had *originally* disputed the debt *directly* to the debt collector. *Id.* On that basis, the court dismissed the plaintiff's FCRA claims. *Id.*

First Premier next cites *McGee v. Equifax Info. Servs., LLC*, No. 18-cv-4144, 2019 WL 2714505 (N.D. Ga. Mar. 19, 2019). In *McGee*, the plaintiff initially disputed debts *directly* to a debt collector. *Id.* at *1. The plaintiff then sent letters to the CRAs stating that she no longer disputed the account and wanted the dispute remarks removed. *Id. McGee* held that "[t]he FCRA

6

requires that a furnisher report a debt as disputed when a consumer disputes a debt *directly to the furnisher*. *Id.* at *2, citing 15 U.S.C. § 1681s-2(a)(3) (emphasis added).  The court then found that, after directly disputing to the debt collector, the plaintiff never directly informed the debt collector that she no longer disputed the debt.  *Id.*  As in *Roth*, the plaintiff's FCRA claims in *McGee* were dismissed because the plaintiff never directly informed the debt collector that she no longer disputed the debt after she *initially* disputed the debt directly to the debt collector.  *Id.* at *2-3.  The other opinions cited by First Premier follow *Roth* and *McGee* and repeat the same rationale.

This Court should follow *Harris v. Equifax Info. Servs., LLC*, No. 20-cv-1770, 2020 WL 6545977 (M.D. Fla. Nov. 6, 2020), which is more similar to the instant case than *Roth* or *McGee*.  *Harris* involves a nearly-identical complaint to that in the instant case.  *Id.* at *1.  In *Harris*, the defendant's motion to dismiss cited *Roth* and *McGee* for the same reasons as cited by First Premier, but the court found that "[w]hile the cases cited by [the defendant] support its position, they involve slightly different facts and are not binding authority on this Court."  *Id.* at *2 (brackets added); *Harris*, No. 20-cv-1770 at Doc #9.  As a result, the court denied the  motion to dismiss.  *Id.* at *2.

In another opinion, Trans Union's motion to dismiss a complaint nearly identical to that filed by Plaintiff was denied.  *Wheeler v. Trans Union, LLC*, No. 17-cv-3328, 2018 WL 2431876 (D. Ariz. May 30, 2018).  In *Wheeler*, sent dispute letters to CRAs stating that he no longer disputed certain tradelines and wanted the dispute language removed.  *Id.* at *1.  Thereafter, the plaintiff obtained his credit files and noticed that the dispute language had not been removed.  *Id.*

Trans Union moved to dismiss the complaint, which the court denied.  *Id.* at *5.  As to the Rule 12(b)(6) aspects of the motion, the court held that the plaintiff stated a claim for relief for Trans Union's violation of 15 U.S.C. § 1681e(b) of the FCRA because the plaintiff (1) "has stated a claim based on his alleged facts that Trans Union used unreasonable procedures;" (2) the

plaintiff's "claim for damages is sufficiently alleged to survive a motion to dismiss.;" and (3) the plaintiff "has alleged sufficiently particular actual damages to state a claim." *Id.* at *3-4.

Accordingly, Plaintiff requests this Court to follow *Wheeler* and *Harris*. As in *Harris*, this case involves slightly different facts than *Roth* and *McGee*; namely, that Plaintiff did not initially dispute the debt directly to First Premier. *Roth* and *McGee* are premised on the plaintiff having initially disputed the debt directly to the furnisher, but that is not the situation here. Since Plaintiff did not initially dispute her debt directly to First Premier, *Harris* is most similar to the instant case.

### B. The Northern District of Georgia opinions were wrongly decided

In addition, *Roth* and *McGee* (and the Northern District of Georgia opinions that relied upon them) were wrongly decided. In each case, the court held that, after the plaintiff directly disputed the debt to the furnisher, 15 U.S.C. § 1681s-2(a)(3) required the furnisher to continue to report the debt as disputed unless the plaintiff directly informed the furnisher that she no longer disputed the debt. *Roth*, 2017 WL 2181758 at *3; *McGee*, 2019 WL 2714505, at *2-3.

Section 1681s-2(a)(3) contains no such requirement. "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2(a)(3). This provision states what a furnisher must do when it receives a direct dispute from a consumer, but it says nothing about what a furnisher must do if it later receives notice from the consumer (either directly or indirectly via a CRA) that the consumer no longer disputes the account and wants the dispute remarks removed. There is good reason for that, because this scenario is covered by 15 U.S.C. § 1681s-2(b), rather than by 15 U.S.C. § 1681s-2(a).

8

"The FCRA imposes two separate duties on furnishers. First, § 1681s–2(a) requires furnishers to submit accurate information to CRAs. Second, § 1681s–2(b) requires furnishers to investigate and respond promptly to notices of customer disputes." *Green v. RBS Nat'l Bank*, 288 Fed. App'x 641, 642 (11th Cir. 2008). Section 1681s-2(a)(3) creates a duty for the furnisher to report information as disputed after a consumer directly disputes the information to the furnisher, but that is all. *Roth* and *McGee* went further and created a previously non-existent duty: to continue to report information as disputed *unless the consumer directly notifies the furnisher that he no longer disputes the information*. Congress created 15 U.S.C. § 1681s-2(b), not 15 U.S.C. § 1681s-2(a)(3), to handle investigations of disputed information.

As discussed above, Plaintiff did not initially dispute her account directly to First Premier, so 15 U.S.C. § 1681s-2(a)(3), *Roth* and *McGee* do not apply to this case. Nothing in 15 U.S.C. § 1681s-2(a)(3) requires Plaintiff to directly inform First Premier if she no longer disputes the debt and wants the dispute remarks removed. Further, nothing in 15 U.S.C. § 1681s-2(a)(3) requires First Premier to continue reporting the tradeline as disputed unless Plaintiff *directly* notifies First Premier otherwise. To the contrary, 15 U.S.C. §§ 1681i(a)(2), 1681s-2(b), and well-established case law provide that a consumer may dispute inaccurate information to a CRA, that the CRA must forward the dispute to the furnisher, and that the furnisher must reasonably investigate the dispute. Section 1681s-2(b) – not 15 U.S.C. § 1681s-2(a)(3) – governs whether a furnisher must remove an inaccurate dispute remark in response to a consumer's dispute of that remark.

As a result, Plaintiff requests this Court to disregard *Roth* and *McGee*, which created (out of thin air) a duty upon consumers to dispute an inaccurate dispute status differently than any other kind of inaccurate information. Instead, Plaintiff requests this Court to follow the FCRA and treat Plaintiff's dispute of the inaccurate dispute status no differently than any other type of dispute.

### 3. First Premier cannot be liable for removing an inaccurate dispute remark in response to Plaintiff's proper dispute through a CRA

First Premier also argues that "[i]f the plaintiff does not directly inform the furnisher that the tradeline is no longer disputed, the furnisher may not simply change its notation. Otherwise, a furnisher would be simultaneously exposed to liability for both reporting the tradeline as disputed and not reporting the tradeline as disputed." and that "[i]f Plaintiff genuinely wished for the notation to be removed, she need only contact First Premier directly." (Doc #24, p. 11.)

First Premier's argument not only is false, but it highlights why *Roth*, *McGee* and the subsequent Northern District of Georgia opinions were wrongly decided. First Premier essentially argues that it is in a Catch-22 situation, because it allegedly would be liable for violating 15 U.S.C. § 1681s-2(a)(3) if it removed the dispute remark in response to Plaintiff's dispute to the CRAs, but it would be liable for violating 15 U.S.C. § 1681s-2(b) if it did not remove the dispute remark in response to the same dispute. First Premier's argument fails for multiple reasons.

First, First Premier is not in a Catch-22 situation at all. Contrary to First Premier's argument, nothing in 15 U.S.C. § 1681s-2(a)(3) requires a furnisher to continue to report an inaccurate dispute status after the consumer informs it that she no longer disputes the account and wants the inaccurate dispute remarks removed, regardless of whether that information comes directly from the consumer or indirectly from the consumer (via a CRA). Similarly, nothing in 15 U.S.C. § 1681s-2(a)(3) – or any other section of the FCRA – imposes a duty upon a consumer to dispute an inaccurate dispute status directly to a furnisher rather than to a CRA as provided by 15 U.S.C. § 1681i. Only through the application of *Roth*, *McGee* and the subsequent Northern District of Georgia opinions are the waters muddied and a purported Catch-22 situation created.

Second, First Premier's argument that Plaintiff "need only contact First Premier directly" is flawed. When a consumer wishes to dispute inaccurate information in her credit files, the

10

consumer begins by disputing to the CRA, not the furnisher. 15 U.S.C. § 1681i(a)(1)(A). The CRA is then required to investigate the dispute and notify the furnisher of the dispute and include all relevant information. 15 U.S.C. § 1681(a)(1)(A), (2)(A). The furnisher must then investigate the dispute it receives from the CRA and report its results to the CRA. 15 U.S.C. § 1681s-2(b). If the CRA finds the disputed information to be inaccurate, then it shall promptly delete or modify the inaccurate information and notify the furnisher. 15 U.S.C. § 1681i(a)(5)(A).

Conversely, if a consumer disputes directly to a furnisher, the FCRA does not require a furnisher to notify the CRA of the dispute except (1) to report the fact of the dispute (i.e., the dispute notation) and (2) to report any corrected information. 15 U.S.C. §§ 1681s-2(a)(3), (a)(8)(E)(iv). If a furnisher receives a dispute directly from a consumer and determines that nothing in its reporting needs to be corrected, the furnisher is not required to do anything other than report the dispute notation and the CRA will not know what information was disputed. Furthermore, a consumer who disputes directly to a furnisher (as opposed to a CRA) has no private right of enforcement against a furnisher's violations of the FCRA and thus no means to ensure that the furnisher complies with the FCRA (such as performing a reasonable investigation of a dispute and correcting any inaccurate information). 15 U.S.C. § 1681s-2(c)(1). Thus, the statutory scheme of the FCRA is set up for consumers to dispute inaccurate information to CRAs (who then forward the disputes to the furnishers), rather than directly to furnishers.

If Plaintiff had disputed the inaccurate dispute status directly to First Premier (as First Premier suggested), First Premier could fail and/or refuse to remove the inaccurate dispute remarks with near impunity, as Plaintiff would have no recourse against First Premier for reporting inaccurate information under 15 U.S.C. § 1681s-2(a). 15 U.S.C. § 1681s-2(c)(1). Only by following the FCRA and sending her dispute to the CRAs – who then forward her dispute to First

Premier – can Plaintiff (or any consumer) ensure either that the inaccuracies in her credit reports will be corrected or that she can seek to enforce the FCRA if her credit reports are not corrected.

Nonetheless, First Premier argues that the FCRA requires it to continue reporting a dispute notation in a tradeline, even if it receives the consumer's dispute via the CRAs stating that she no longer disputes the tradeline and wants the inaccurate dispute notation removed. (Doc #24, p. 7.) Thus, First Premier essentially argues that the FCRA requires it to knowingly report an inaccurate dispute status (because it received from the CRAs the consumer's dispute stating that the dispute notation is inaccurate), unless the consumer sends her dispute letter to directly to First Premier.

First Premier's argument both is nonsense and not supported by the FCRA. Contrary to its argument, the FCRA requires First Premier to perform a reasonable investigation of Plaintiff's dispute that it received from the CRAs. 15 U.S.C. § 1681s-2(b)(1). First Premier cannot ignore Plaintiff's dispute simply because it received her dispute indirectly from Plaintiff rather than directly from Plaintiff. By failing to properly investigate Plaintiff's dispute and reporting a knowingly inaccurate dispute status simply because it did not receive Plaintiff's dispute directly from Plaintiff, First Premier violated 15 U.S.C. § 1681s-2(b) of the FCRA.

*Seamans v. Temple Univ.*, 744 F.3d 853 (3d Cir. 2014) provides insight to First Premier's argument that it must continue to report the dispute remarks pursuant to 15 U.S.C. § 1681s-2(a)(3). In *Seamans*, the plaintiff disputed information regarding the furnisher's trade line to the CRA rather than directly to the furnisher. *Id.* at 857-58. Among other things, the furnisher did not respond to the dispute by reporting the account as disputed. *Id.* at 858. Having reviewed this matter in the context of 15 U.S.C. § 1681s-2(a)(3), the Third Circuit held that the furnisher also had a continuing duty to report the account as disputed pursuant to 15 U.S.C. § 1681s-2(b). "In other words, the fact that a furnisher is affirmatively obligated to flag an account as disputed under

§ 1681s–2(a) does not undermine the conclusion that a *failure* to flag the account as disputed also constitutes a material inaccuracy under § 1681s–2(b)." *Seamans*, 744 F.3d at 867 (italics in original). The Third Circuit then held that "a private cause of action arises under 15 U.S.C. § 1681s–2(b) when, having received notice of a consumer's potentially meritorious dispute, a furnisher subsequently fails to report that the claim is disputed." *Id.* Notably, the Third Circuit found that "[n]o court has ever suggested that a furnisher can excuse its failure to identify an inaccuracy when reporting pursuant to § 1681s–2(b) by arguing that it should have *already* reported the information accurately under § 1681s–2(a)." *Id.* This finding refutes the premise of First Premier's motion that it cannot correct inaccurate dispute information received from Plaintiff via a CRA under 15 U.S.C. § 1681s-2(b) because it was allegedly required to report the account as disputed under 15 U.S.C. § 1681s-2(a)(3).

*Seamans* simply provides the inverse situation of that in the instant case, but the rationale behind the opinion applies here. In *Seamans*, the consumer disputed inaccurate information to a CRA and the furnisher failed to report a trade line as disputed that was previously reported as undisputed. The furnisher attempted to hide behind 15 U.S.C. § 1681s-2(a)(3) to avoid its duties under 15 U.S.C. § 1681s-2(b), but the Third Circuit held otherwise. In the instant case, Plaintiff disputed inaccurate information (the inaccurate dispute status) to a CRA and the furnisher failed to report the trade line as undisputed that was previously reported as disputed. Like in *Seamans*, First Premier cannot hide behind 15 U.S.C. § 1681s-2(a)(3) to avoid its duty to reasonably investigate Plaintiff's dispute and report the dispute status accurately.

    4.  **<u>The FCRA does not permit First Premier to ignore Plaintiff's dispute and continue to report inaccurate information</u>**

Next, First Premier argues that "Plaintiff does not allege that her letter to the CRAs disputed the accuracy of any information being reported" and that "Plaintiff sets forth no allegation she ever

13

'dispute[d] . . . the completeness or accuracy' of the 'account in dispute' notation." (Doc #24, p. 12.) That argument is plainly false, as Plaintiff alleges that she no longer disputes the First Premier tradeline and requested the inaccurate dispute notation to be removed. (Doc #6, ¶ 13.) Although Paragraph 13 of the amended complaint does not contain the word "inaccurate," Plaintiff plainly alleges that she no longer disputes the First Premier tradeline (rendering the dispute notation inaccurate). (Doc #6, ¶ 13.) Plaintiff pled the inaccuracy in the First Premier tradeline.

First Premier's reliance on *De Rios v. Wells Fargo Bank, Nat'l Ass'n*, No. 11-ca-542, 2011 WL 13324205 (W.D. Tex. Dec. 21, 2011) is misplaced. *De Rios* holds that a *pro se* plaintiff failed to plead sufficient facts to support her claims by failing to explain why the accounts listed in her credit report are inaccurate or what bearing the proof of her name had on her claims. *Id.* at *9.

*De Rios* has no connection to the instant case. As discussed above, Plaintiff pled the inaccuracy in the First Premier tradeline: the inaccurate dispute status. (Doc #6, ¶¶ 6, 7, 11.) Plaintiff further pled that she sent dispute letters to the CRAs stating that she no longer disputes the First Premier tradeline and wanted the inaccurate dispute notation removed. (Doc #6, ¶ 13.) Plaintiff further pled that the CRAs forwarded Plaintiff's disputes to First Premier, who received Plaintiff's dispute. (Doc #6, ¶ 14.) Plaintiff further pled that First Premier failed to remove the dispute notation in response to Plaintiff's disputes. (Doc #6, ¶ 15.) Plaintiff further pled that First Premier failed to perform a proper investigation of Plaintiff's disputes. (Doc #6, ¶¶ 22, 29.) Plaintiff further pled that First Premier failed to review all relevant information available to it and provided by the CRAs; namely, Plaintiff's dispute letters. (Doc #6, ¶¶ 23, 30.) Plaintiff clearly supported her claims with factual allegations.

However, Plaintiff is not required plead the "particularized facts" sought by First Premier for two reasons. First, Plaintiff does not need to plead facts with particularity, because Plaintiff

does not allege fraud, mistake, special damages, or any other matter that requires pleading facts with particularity. Fed. R. Civ. P. 9(b), (g). Case law does not hold Plaintiff to First Premier's standard, but merely requires that Plaintiff plead sufficient facts to state a plausible claim for relief. *Iqbal, supra*. Plaintiff's allegations are sufficient to put First Premier on notice of her claims, which is all that Plaintiff is required to do at the pleading stage.

Second, Plaintiff cannot plead particularized facts about First Premier's investigation of Plaintiff's disputes because Plaintiff cannot know the details of First Premier's until Plaintiff engages in discovery. "It is sufficient for Plaintiff to simply allege that the furnisher failed to conduct a reasonable investigation. This is particularly true where the details about the furnisher's investigative procedures and activities are solely within the furnisher's knowledge and cannot be ascertained until Plaintiff is permitted to engage in discovery." *Ellis v. Equifax Info. Servs., LLC*, No. 18-cv-5185, 2019 WL 3521436, at *5 n. 7 (N.D. Ga. June 6, 2019), report and recommendation adopted on June 24, 2019. Requiring a consumer to know and plead specific facts regarding the details of a furnisher's investigative practices would prevent any consumer from filing any lawsuit under the FCRA, as virtually no consumer would or could know such facts before engaging in discovery. These matters are classic matters for discovery in FCRA cases.

Numerous courts across the country have held that the pleading of damages nearly identical to that by Plaintiff satisfies the general pleading standards. *See, e.g., Wheeler,* 2018 WL 2431876 at *4; *Ellis v. Equifax Info. Servs., LLC*, No. 18-cv-5185, 2019 WL 3503538, at *4 (N.D. Ga. June 6, 2019); *Lovelace v. Equifax Info. Servs., LLC*, No. 18-cv-04080-DWL, 2019 WL 2410800, at *5 (D. Ariz. June 7, 2019); *Burns v. Trans Union, LLC*, No, 18-cv-03120, 2019 WL 3890833, at *2-3 (D.S.C. Aug. 19, 2019); *Barrios v. Equifax Info. Servs., LLC*, No. 19-cv-5009, 2019 WL 7905897, at *4 (C.D. Cal. Oct. 28, 2019); *Hamm v. Equifax Info. Servs., LLC*, No. 17-cv-3821,

2018 WL 3548759, at *4 (D. Ariz. July 24, 2018). Therefore, Plaintiff properly pled that First Premier failed to conduct a proper investigation of Plaintiff's dispute.

### 5. First Premier is required by 15 U.S.C. § 1681s-2(b) to reasonably investigate Plaintiff's dispute of the inaccurate dispute status

First Premier also argues that the inaccurate dispute status is different than other inaccurate information in the tradelines and that First Premier therefore has no duty to investigate or correct it. (Doc #24, pp. 14-15.) First Premier's argument relies on one opinion: *Hardnett v. Equifax Info. Servs., LLC*, No. 20-cv-3017, (N.D. Ga. Dec. 16, 2020). However, *Hardnett* is a Report and Recommendation by a magistrate judge ("the R&R"), to which the plaintiff filed an objection. *Hardnett*, Doc #47. The plaintiff's objection to the R&R remains pending before the district judge.

In *Hardnett*, the R&R stated that the FCRA separates "*personal information…about a consumer* from information [submitted] *by the consumer*" and refers to the latter as "*second-order* or *meta-information*." (Doc #45, p. 11, emphasis in original.) After making this (non-existent) distinction, the R&R concluded that the latter, which includes a consumer's dispute notation, is not the type of information protected under the FCRA. (Doc #45, p. 13.)

In fact, the FCRA makes no distinction between "personal information" and "meta-information" and no judicial opinion other than the R&R makes such a distinction. To the contrary, the FCRA provides that a CRA must reasonably investigate "any item of information" disputed by the consumer. 15 U.S.C. § 1681i(a)(1)(A). Section 1681i(a)(1)(A) does not exclude certain types of information from "any item of information" and to do so would frustrate the very purpose of the FCRA. Furnishers must investigate disputes that they received from CRAs and therefore must investigate the same "items of information." 15 U.S.C. § 1681s-2(b). "Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).

16

By construing the FCRA to exclude certain types of inaccurate information from being disputed by consumers, the R&R would prevent consumers from obtaining fair and accurate credit reporting and would act as a slap-in-the-face to the FCRA and to consumers everywhere.

### 6. First Premier's investigation of Plaintiff's dispute should have been simple

Finally, First Premier argues that "[a] furnisher has no obligation to conduct an investigation upon receiving a notice from the CRA that the consumer allegedly no longer disputes the subject account because the furnisher would have nothing to investigate." (Doc #24, p. 15.) First Premier's argument is false because First Premier needs nothing beyond Plaintiff's dispute letter to investigate Plaintiff's dispute.

As First Premier correctly points out in the beginning of its argument, "[t]he decision to dispute or not dispute a debt is completely up to the debtor." Doc #24, p. 15, quoting *Roth*, 2017 WL 2181758 at *3. Thus, when it received Plaintiff's dispute and learned of Plaintiff's decision to not dispute the debt, First Premier should have corrected its reporting by removing the dispute remarks. As First Premier also correctly points out, what determines a reasonable investigation may vary depending on the circumstances. (Doc #24, p. 16.) "[T]he parameters of a reasonable investigation will . . . depend on the circumstances of a particular dispute." *Watkins v. Experian Info. Solutions, Inc.*, No. 13-cv-239, 2014 WL 12879669 at *8 (W.D. Tex. Sep. 8, 2014), quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 713 (3d Cir 2010).

The circumstances of Plaintiff's dispute are that Plaintiff no longer disputed the First Premier tradeline and therefore requested the inaccurate dispute remarks to be removed. When First Premier received Plaintiff's dispute from the CRAs, it learned that fact and should have corrected its tradeline accordingly. It is that simple.

17

Nonetheless, First Premier argues that Plaintiff's "change of heart did not erase the fact that she previously disputed the debt, which is the only objective historical fact that First Premier's investigation could possibly reveal." First Premier's argument lacks merit for three reasons.

First, a consumer is not required to continue disputing an account forever. If a consumer realizes that the account is reporting accurately, why should a consumer be prevented from recognizing that and informing the CRA and furnisher that she no longer disputes the account and wants the inaccurate dispute remark removed? Why should a consumer be forced to live with inaccurate information in her credit files?

There was nothing for First Premier to investigate beyond the dispute letter, as nothing beyond the dispute letter was relevant to Plaintiff's dispute. If a person no longer disputes an account and wants an inaccurate dispute status removed, how else can a person convey that she no longer disputes the account other than by her own statement? More importantly, if a person wants an inaccurate dispute status removed, why should a person **need** to do anything other than provide her statement that she no longer disputes the account and that the inaccurate dispute status should be removed? What else could that person do to show that the dispute status is inaccurate? In fact, such a result would contradict the FCRA's purpose "to ensure fair and accurate credit reporting." *Safeco, supra*. Moreover, most (if not all) mortgage lenders will not process an application for a mortgage if the consumer's credit report contains any dispute remarks, because the consumer's credit score will not factor in the disputed accounts (which almost always are negative).

Second, First Premier's argument that consumers cannot have a "change of heart" undermines its earlier argument that Plaintiff should have sent her dispute letter directly to First Premier. It seems that First Premier's "change of heart" argument would apply equally whether Plaintiff sent her dispute letter to First Premier or to the CRAs.

18

Third, First Premier's argument that Plaintiff's previous dispute was "the only objective historical fact that First Premier's investigation could reveal" is plainly false. Plaintiff previously disputed the First Premier account through the CRAs, not directly to First Premier. If the previous dispute is an objective fact, then Plaintiff's current dispute also is an objective fact.

However, First Premier argues that Plaintiff's previous dispute was a "historical" fact, i.e., something that First Premier could review and see in its files. Since Plaintiff's dispute of the inaccurate dispute status itself contained the basis of her dispute – that she no longer disputes the First Premier tradeline – First Premier argues that nothing in its files could have revealed that the dispute status was inaccurate. Accepting First Premier's argument would lead to an absurd result that Plaintiff would have to dispute the inaccurate dispute status *twice*, even if Plaintiff had sent the dispute letter directly to First Premier. After all, if Plaintiff had sent the dispute letter directly to First Premier (as First Premier suggests that Plaintiff should have done), First Premier would not have had anything in its files before receiving Plaintiff's dispute letter to show that the dispute letter was inaccurate. The result would be identical to the actual situation of Plaintiff sending her dispute letter to the CRAs. Taking First Premier's argument to its natural conclusion, a consumer wishing to dispute an inaccurate dispute status would have to first send a dispute letter to First Premier for the sole purpose of placing a document in First Premier's files for review in connection with a subsequent dispute. Then, Plaintiff would have to send a second dispute letter, so First Premier would have the first dispute letter in its files to review and then correct the tradeline.

Of course, Congress did not intend such an absurd result when it enacted the FCRA. Rather, Congress required a furnisher to perform a reasonable investigation of a consumer's dispute that the furnisher received from a CRA. 15 U.S.C. § 1681s-2(b). The reasonableness of the investigation depends on the circumstances of the dispute. *Watkins*, *supra*. Given that "[t]he

decision to dispute or not dispute a debt is completely up to the debtor," *Roth*, *supra*, and the foregoing law, it follows that the reasonableness of an investigation of a dispute of an inaccurate dispute status does not involve "historical" matters, but rather whether the consumer currently disputes the debt. That determination can **only** be made by looking at the consumer's current dispute letter. No other information can conceivably bear on the accuracy of the dispute status.

## CONCLUSION

For the foregoing reasons, Plaintiff requests this Court to deny First Premier's motion to dismiss.

Respectfully submitted,

Dated: March 19, 2021

By: */s/ Michael B. Halla*
Texas Bar Number 24010082
Attorney at Law
5050 Quorum Dr., Suite 625
Dallas, Texas 75254
Telephone: (512) 626-2749
Email: mhalla@hallalawfirm.com
*Attorney for Plaintiff*

## Certificate of Service

I, Michael B. Halla, hereby state that on March 19, 2021, I served a copy of the foregoing document upon all parties and counsel as their addresses appear of record via the Court's CM/ECF system.

/s/ Michael B. Halla